UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JAMES D. DUNCAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No:   3:20-CV-8-TAV-HBG |
| | ) |
| ANDERSON COUNTY, TN and | ) |
| SOUTHERN HEALTH PARTNERS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Defendants Anderson County, Tennessee ("Anderson County") and Southern Health Partners ("SHP") have each filed motions for summary judgment in this pro se prisoner's civil rights action for violation of 42 U.S.C. § 1983 [Docs. 119 and 121]. James D. Duncan ("Plaintiff) has filed a response in opposition to the motion [Doc. 123]. Upon consideration of the parties' pleadings, the summary judgment evidence, and the applicable law, the Court finds that summary judgment should be **GRANTED** in favor of Defendants, and this action should be **DISMISSED**.

### I.     PLAINTIFF'S ALLEGATIONS

While housed at the Anderson County Detention Facility ("ACDF") in October 2018, Plaintiff requested emergency dental treatment that he failed to receive [Doc. 10 p. 3-4]. For the next three to four weeks, Plaintiff was unable to eat or drink very much, and he was in pain from an infection [*Id*. at 4]. Thereafter, Plaintiff made a verbal request for treatment, which resulted in an unnamed nurse placing him on a list to see the

dentist, who visited the facility once a month to treat inmates [*Id.*]. Plaintiff did not receive any evaluation or treatment, however [*Id.*]. As of January 2019, this lack of treatment had resulted in Plaintiff suffering "infections, loss of bone, and life[-]threatening conditions" [Doc. 7 p. 3]  Plaintiff maintains that his October 2018 medical request was not answered until November 25, 2019, when he was finally issued a response of "seen, added to dentist list" [*Id.* p. 5].

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material" if resolving that fact in favor of one party "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To establish an entitlement to summary judgment, the moving party must demonstrate that the nonmoving party cannot establish an essential element of his case for which he bears the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 322; *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate by setting forth specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 249. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party,"

2

then there is a genuine dispute as to a material fact. *Anderson*, 477 U.S. at 248. If no proof is presented, however, the Court does not presume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 889 (1990)).

The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), "conclusory allegations," *Lujan*, 497 U.S. at 888, or by a mere "scintilla" of evidence, *Anderson*, 477 U.S. at 252. It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan*, 497 U.S. at 888. Therefore, in considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible*. *Matsushita,* 475 U.S. at 586. (emphasis added). "[D]etermining whether a complaint states a plausible claim for relief. . . [is] context-specific[,] . . . requir[ing] the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, . . . [the ultimate decision becomes]. . . a pure question of law."
3

*Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

### III. SUMMARY JUDGMENT EVIDENCE

Plaintiff's first relevant stay at ACDF began on October 23, 2018 [Doc. 119-1 ¶ 7; Doc. 119-1 p. 8]. As part of his initial intake, Plaintiff was medically evaluated and asked a series of questions to determine any need for critical or emergency medical care [Doc. 119-1 ¶ 8]. The questions, and Plaintiff's responses thereto, were documented in an Inmate Medical Form that Plaintiff signed [Doc. 119-1 ¶8.; Doc. 119-1 p. 9]. During this screening, Plaintiff did not disclose any dental issues [Doc. 119-1 ¶ 8; Doc. 119-1 p. 9]. Two days later, Plaintiff submitted a non-emergency request to be see a doctor or nurse about his tooth [Doc. 119-1 ¶11; Doc. 119-1 p. 10; Doc. 124 p. 3, 5]. On the same day, Plaintiff was examined by a nurse who noted Plaintiff had a broken tooth and placed Plaintiff on a dental list [Doc. 119-1 ¶ 12; Doc. 119-1 p. 11; Doc. 124 p. 5].

At the time of Plaintiff's first relevant stay at ACDF, medical services were provided through Quality Correctional Healthcare [Doc. 119-1¶ 10]. ACDF's contracted dentist, Dr. Dana Rust, was only at the facility on November 2, 2018 and December 21, 2018 during Plaintiff's initial stay at ACDF [Doc. 119-1 ¶13; Doc. 119-1 p. 12]. ACDF generally follows a "first come, first serve" process as related to seeing the dentist, with the most serious conditions receiving priority treatment [Doc. 119-1 ¶ 14]. Because of this,

4

Plaintiff was not seen on either of the two aforementioned dates [Doc. 119-1 ¶ 15]. Plaintiff filed over fifty grievances between October 2018 and his release in January 2019, but he did not make a single complaint about any dental issues, wanting to see the dentist, nor did he request pain relievers [Doc. 119-1 ¶ 16]. Plaintiff was released from ACDF on January 14, 2019 [Doc. 119-1 ¶ 17].

Plaintiff was arrested on February 24, 2019 and was incarcerated in ACDF from February 24 to February 25, 2019 [Doc. 119-1 ¶19; Doc. 119-1 p. 13]. Following his arrest on February 24, Plaintiff again went through an initial intake screening and failed to disclose that he was suffering from any dental issues [Doc. 119-1 ¶ 19; Doc. 119-1 p. 13-14].

Plaintiff was again arrested and booked back into ACDF on July 26, 2019 [Doc. 119-1 ¶ 21; Doc. 119-1 p. 15]. By this time, ACDF was contracting medical services through SHP, a private contractor which entered into a contract with ACDF on March 1, 2019 [Doc. 119-1 ¶ 20; Doc. 121-1 ¶¶ 4-5]. Plaintiff alleges that he made an oral request to be placed on the dental list [Doc. 119-2 ¶7; Doc. 119-2 p. 6]. However, during intake, Plaintiff failed to disclose that he had any dental issues [Doc. 119-1 ¶ 22; Doc. 119-1 p. 16]. In fact, he listed his only medical problem as "Heart Problems" [Doc. 121-1 ¶6; Doc. 121-1 p. 4]. Plaintiff underwent a physical examination on August 5, 2019, and it was noted at that time that he had a broken right molar [Doc. 121-1 ¶ 7; Doc. 121-1 p. 6]. Plaintiff did not request dental care related to his molar, nor did he demonstrate any signs or symptoms that he required dental treatment [Doc. 121-1 ¶ 7].

5

On November 21, 2019, Plaintiff filed a grievance stating that he made an oral request during booking to see the dentist and had not been seen, despite having filed a medical request two incarcerations prior [Doc. 119-1 ¶ 24; Doc. 119-1 p. 17; Doc. 124 p. 6]. Anderson County responded by noting that Plaintiff had not filed a medical request related to dental issues since he was arrested in July 2019 [Doc. 119-1 ¶ 25; Doc. 119-1 p. 17; Doc. 124 p. 6]. This response was consistent with ACDF policy, which states that medical and dental requests must be filled out using the medical request form system [Doc. 19-1 ¶ 26; Doc. 119-1 p. 21-24]. Plaintiff was, however, given an opportunity to be seen by the dentist the following day, November 22, 2019 [Doc. 119-1 ¶28; Doc. 119-1 p. 25; Doc. 124 p. 6]. When Plaintiff was approached about seeing the dentist the following day, Plaintiff stated he did not put in a request and did not wish to be examined by the dentist [Doc. 119-1 ¶ 29; Doc. 119-1 p. 17-18, 25; Doc. 119-2 ¶ 8]. As such, Plaintiff's dental service record shows that he "Refused Dentist" on November 22, 2019 [Doc. 119-1 ¶30; Doc. 119-1 p. 26; Doc. 121-1 p. 7].

On November 25, 2019, Plaintiff appealed the disposition of his grievance, which Anderson County responded to by stating, "Sir you never placed a sick call stating that you needed to see the dentist. Then when you were asked if you wanted to see the dentist when he was here last you stated that you did not." [Doc. 119-1 ¶ 31; Doc. 119-1 p. 18]. On December 2, 2019, Plaintiff filed a second appeal, stating "booking officer stated they would put me on the list" [Doc. 119-1 ¶ 32; Doc. 119-1 p. 17.]. Lieutenant Mary Fenton responded:

6

> Sir, you sign a form upon intake stating that you understand the rules and the procedures for medical/dental sick call. I have spoken with medical and on 21 November you were contacted by Deputy Allen and you were informed that you would be seeing the dentist on Friday 22 November. On Friday, 22 November, Deputy Allen came to get you for your appointment and you stated that you did not want to see the dentist. You stated that you verbally told booking about your tooth issues. Proper procedure is to fill out a sick call and to be seen by medical and then be placed on the dental list. Bottom line is that you have been afforded the opportunity to see a dentist and you have declined that opportunity.

[Doc. 119-1 ¶ 32; Doc. 119-1 p. 18].

On or around December 23, 2019, Plaintiff appealed a third time [Doc. 119-1 ¶ 33]. On December 31, 2019, Plaintiff had a hearing with Captain Shain Vowell to discuss his grievances.[1] [Doc. 119-1 ¶ 34; Doc. 119-2 ¶ 6]. At this hearing, Plaintiff admitted that his grievance stemmed from the same dental ailment from October 2018, that he had not properly requested dental services upon reentry to ACDF, that he had a chance to go see the dentist which he declined, and that following the meeting Plaintiff would submit a proper medical request [Doc. 119-2 ¶ 8; Doc. 119-2 p. 4-7, 10-13]. Plaintiff also agreed that his grievance was resolved [Doc. 119-2 ¶ 9; Doc. 119-2 p. 11, 17].

After this hearing, Plaintiff filed a medical request to be placed on the dental list [Doc. 119-1 ¶ 35; Doc. 119-1 p. 27]. Plaintiff was placed on the dental list, and he was evaluated by Dr. Dana Rust, DDS, on February 14, 2020 [Doc. 119-1 ¶ 36; Doc. 19-1 p. 28]. Following the dental examination, Plaintiff was provided Ibuprofen [Doc. 119-1 ¶

---

[1] Plaintiff filed another grievance on November 22, 2019, that was essentially merged into the November 21, 2019 grievance [Doc. 119-1 ¶ 24]. Both grievances were addressed at this hearing [Doc. 119-2 ¶ 9].

7

37; Doc. 119-1 p. 28, 29]. Plaintiff has not filed subsequent medical request for dental issues or further appeals of his prior dental grievances [Doc. 119-1 ¶¶ 38, 39].

## IV. DISCUSSION

### A. Relevant Law

In order to establish a § 1983 claim, Plaintiff must demonstrate that he was deprived of a federally secured right by a person acting under the color of state law. 42 U.S.C. § 1983. Here, Plaintiff has alleged that Anderson County and SHP denied him necessary dental treatment in violation of the Eighth Amendment's prohibition against cruel and unusual punishment, which proscribes acts or omissions that produce an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). An Eighth Amendment claim for the denial of adequate medical treatment is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendants acted with "deliberate indifference" to that need. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994).

Negligence is insufficient to establish § 1983 liability; deliberate indifference requires a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40). Therefore, to establish an officer's liability, a prisoner must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

8

The Sixth Circuit has recognized that the existence of a sufficiently serious medical need may not be "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899-900 (6th Cir. 2004). In such situations, the Sixth Circuit requires the plaintiff to produce "verifying medical evidence" of "minor maladies or non-obvious complaints of a serious need for medical care." *Burgess v. Fischer*, 735 F.3d 462, 477 (6th Cir. 2013) (quoting *Blackmore*, 390 F.3d at 898).

Where medical treatment has been provided, a prisoner's disagreement with the adequacy of care given does not implicate the Constitution. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1996). This is because "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Id.* (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Rather, to state a constitutional claim, such a prisoner must show that his treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2001); *see also Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843-44 (6th Cir. 2002).

Further, to hold either Anderson County or SHP liable under § 1983, Plaintiff must establish that the execution of policy or custom of the entities cased his injury. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817-18 (6th Cir. 1994) (holding municipal liability analysis applies to § 1983 claim against a private corporation). Specifically, a plaintiff asserting a § 1983 claim for municipal liability based on the existence of a custom or policy must identify the policy,

9

connect it to the entity, and demonstrate that the injury was incurred because of the execution of that policy. *Graham v. Washtenaw*, 358 F.3d 377, 388 (6th Cir. 2004). "There must be a 'direct causal link' between the policy and the alleged constitutional violation such that the County's 'deliberate conduct' can be deemed the 'moving force' behind the violations." *Id*. at 383 (citations omitted).

### B. Application

The competent summary judgment evidence yields that Plaintiff's first request for dental treatment occurred on October 25, 2018, and in response, a nurse evaluated him and placed him on a list to be seen by the dentist. At that point, ACDF no longer had any control over whether Plaintiff received subsequent dental treatment, as the dentist determined which prisoners would be seen on any given visit based on a variety of factors, including the number of inmates already on the list and the severity of injury. ACDF did not, therefore, violate Plaintiff's constitutional rights in failing to secure dental treatment for him during his first relevant stay at ACDF in 2018. *See Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004) (holding it is not "unconstitutional for municipalities and their employees 'to rely on medical judgments made by medical professionals responsible for prisoner care'"). Additionally, SHP was not the contract medical provider for ACDF at that time, and therefore, it faces no liability for any inaction during Plaintiff's initial relevant incarceration.

Moreover, the evidence before the Court does not suggest that Plaintiff's dental issue constituted a serious medical need. *See, e.g., McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008) ("[N]ot all dental problems constitute serious medical needs. Rather,

10

a cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities.") (citation and internal quotation marks omitted). For instance, Plaintiff did not disclose any dental pain or dental issues during any of his relevant medical screenings at ACDF. He failed to seek dental treatment when he was not incarcerated between January and July 2019[2]. While Plaintiff's broken molar was noted in his August 5, 2019 physical, there was no notation that Plaintiff had complained of the tooth or that he required any treatment.

Additionally, when Plaintiff failed to file a medical request but instead filed a grievance based on a lack of response to his oral request for treatment, he was promptly offered dental treatment despite his failure to follow the rules. Plaintiff refused that offer of dental treatment. Plaintiff finally did file a proper medical request on December 31, 2019, and he was placed on the dental list and was treated by the dentist. Accordingly, any delay in dental treatment that occurred after Plaintiff's incarceration in July 2019 was the result of his improper use of the grievance procedure and failure to file proper medical requests and not deliberate indifference on the part of Defendants

Finally, Plaintiff has not produced any verifying medical evidence that his teeth deteriorated from the alleged delay in treatment, nor has he alleged an inability to engage in normal activities due to any delay in treatment. *See Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (an inmate who complains that the delay in medical treatment

---

[2] Plaintiff was briefly incarcerated at ACDF from February 24 to February 25, 2019.

11

rose to constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay). Accordingly, the Court finds that Defendants are entitled to summary judgment.

## V. CONCLUSION

For the reasons set forth above, Defendants' motions for summary judgment [Doc. 119 and 121] will be **GRANTED**, and this action will be **DISMISSED WITH PREJUDICE**. The Court hereby **CERTIFIES** that any appeal from this order would not be taken in good faith. Therefore, should Plaintiff file a notice of appeal, this Court will **DENY** Plaintiff leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER**.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE